United States District Court
Southern District of Texas

**ENTERED**

June 27, 2024

Nathan Ochsner, Clerk

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

TERI V.,[1]

§
§

*Plaintiff,*

§
§

v.

§
§

No. 4:23-cv-2307

§

MARTIN O'MALLEY,
Acting Commissioner of Social
Security,

§
§
§
§
§

*Defendant.*

§

## MEMORANDUM AND ORDER

Plaintiff Teri V. ("Plaintiff") filed this suit seeking judicial review of an administrative decision. Pl.'s Compl., ECF No. 1. Jurisdiction is predicated upon 42 U.S.C. § 405(g). Plaintiff appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff's claim for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act ("the Act").[2] The parties filed cross motions for

---

[1] Pursuant to the May 1, 2018 "Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions" issued by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court uses only Plaintiff's first name and last initial.

[2] On August 22, 2023, based on the parties' consent, the case was transferred to this Court to conduct all proceedings pursuant to 28 U.S.C. § 636(c). Order, ECF No. 10.

summary judgment. Pl.'s MSJ, ECF No. 14; Def.'s MSJ, ECF No. 16.[3], [4] Plaintiff

seeks an order rendering benefits or remand for further consideration, arguing that

the ALJ's RFC determination is not supported by substantial evidence because the

ALJ failed to include mental limitations in her RFC determination after conducting

an improper severity assessment at Step Two, in which she erroneously evaluated

certain medical opinions and discounted Plaintiff's symptom testimony. ECF

No. 15. Commissioner counters that the ALJ's severity determination and RFC

determination are supported by substantial evidence. ECF No. 16. Based on the

briefing, the record, and the applicable law, the Court finds that the ALJ failed to

properly evaluate the severity of Plaintiff's mental limitations at Step Two, which

resulted in an improper determination of Plaintiff's RFC. Thus, the Court grants

Plaintiff's motion for summary judgment, denies Commissioner's motion for

summary judgment, and remands the ALJ's decision.

## I.   BACKGROUND

Plaintiff is 63 years old, R. 262,[5] and earned her Bachelor of Science in

nursing. R. 42. Plaintiff worked as a licensed vocational nurse ("LVN") and

---

[3] The Court construes Commissioner's response as a motion for summary judgment because Commissioner asks the Court to grant relief by moving for affirmance of the Commissioner's decision. *See Benavides v. Saul*, No. 2:21-CV-00095, 2022 WL 3701170, at *1 (S.D. Tex. Aug. 26, 2022) (construing parties' briefs as cross-motions for summary judgment).

[4] Plaintiff also filed a reply. ECF No. 19.

[5] "R." citations refer to the electronically filed Administrative Record, ECF No. 11.

registered nurse ("RN"). R. 27. Plaintiff alleges a disability onset date of June 1, 2020. R. 16, 39–42, 61. Plaintiff claims she suffers from physical and mental impairments. R. 61.

On December 26, 2020, Plaintiff filed her application for disability insurance benefits and supplemental security income under Titles II and XVI of the Act. R. 61, 260–63. Plaintiff based [6] her application on "spinal arthritis, degenerative disc disease, joint pain, anxiety, depression, chronic inflammatory, infections, pain, sleep deprived, nausea." R. 61, 70. The Commissioner denied Plaintiff's claim initially, R. 60–77, and on reconsideration, R. 79–109.

A hearing was held before an Administrative Law Judge ("ALJ"). An attorney represented Plaintiff at the hearing. R. 37. Plaintiff and a vocational expert ("VE") testified at the hearing. R. 36. The ALJ issued a decision denying Plaintiff's request for benefits. [7] R. 11–34. The Appeals Council denied Plaintiff's request for review,

---

[6] For Plaintiff's disability insurance benefits, the relevant time period is June 1, 2020—Plaintiff's alleged onset date—through September 30, 2026—Plaintiff's date last insured. R. 16. The Court will consider medical evidence outside this period to the extent it demonstrates whether Plaintiff was under a disability during the relevant time frame. *See Williams v. Colvin,* 575 F. App'x 350, 354 (5th Cir. 2014); *Loza v. Apfel,* 219 F.3d 378, 396 (5th Cir. 2000).

[7] An ALJ must follow five steps in determining whether a claimant is disabled. 20 C.F.R. § 416.920(a)(4). The ALJ here determined Plaintiff was not disabled at step four. R. 28. At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity during the period from her alleged onset date through her date last insured. R. 16 (citing 20 C.F.R. § 404.1571 *et seq.*, § 416.971 *et seq.*). At step two, the ALJ found that Plaintiff has the following severe impairments: cervical, thoracic, and lumbar degenerative disc disease, but found that here depression and anxiety were not severe. R. 17 (citing 20 C.F.R. §§ 404.1520 (c), 416.920(c)). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in the regulations that would lead to a disability finding. R. 21 (referencing 20 C.F.R. §§ 404.1520(d),

upholding the ALJ's decision to deny benefits. R. 1–6. Plaintiff appealed the Commissioner's ruling to this Court. ECF No. 1.

## II.    STANDARD OF REVIEW OF COMMISSIONER'S DECISION.

The Social Security Act provides for district court review of any final decision of the Commissioner that was made after a hearing in which the claimant was a party. 42 U.S.C. § 405(g). In performing that review:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . ., with or without remanding the cause for a rehearing. The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive[.]

*Id.* Judicial review of the Commissioner's decision denying benefits is limited to determining whether that decision is supported by substantial evidence on the record as a whole and whether the proper legal standards were applied. *Id.*; *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001); *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotations omitted). It is "more than a scintilla but less than a

---

404.1525, 404.1526, 416.920(d), 416.925, 416.926). The ALJ found that Plaintiff has the RFC to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except she can occasionally climb ladders, ropes, and scaffolds. R. 22. At step four, the ALJ determined that Plaintiff was able to perform her past relevant work as a LVN and RN. R. 27 (citing 20 C.F.R. §§ 404.1565, 416.965). Therefore, the ALJ concluded that Plaintiff was not disabled. R. 28.

preponderance." *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). The "threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154.

The Court weighs four factors to determine "whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history." *Conley-Clinton v. Saul*, 787 F. App'x 214, 216 (5th Cir. 2019) (citing *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995)).

A reviewing court may not reweigh the evidence in the record, try the issues *de novo*, or substitute its judgment for that of Commissioner, even if the evidence preponderates against Commissioner's decision. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). Even so, judicial review must not be "so obsequious as to be meaningless." *Id.* (quotations omitted). The "substantial evidence" standard is not a rubber stamp for Commissioner's decision and involves more than a search for evidence supporting Commissioner's findings. *Singletary v. Brown*, 798 F.2d 818, 822–23 (5th Cir. 1986); *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). Rather, a reviewing court must scrutinize the record as a whole, taking into account whatever fairly detracts from the substantiality of evidence supporting Commissioner's findings. *Singletary*, 798 F.2d at 823. "Only where there is a 'conspicuous absence of credible choices or no contrary medical evidence' will we find that the substantial

evidence standard has not been met." *Qualls v. Astrue*, 339 F. App'x 461, 464 (5th Cir. 2009).

## III.   DISABILITY INSURANCE BENEFITS AND SUPPLEMENTAL SECURITY INCOME UNDER THE ACT.

The Act permits the payment of insurance benefits to persons who have contributed to the program and who suffer a physical or mental disability. 42 U.S.C. § 423(a)(1)(D). These payments are referred to as disability insurance benefits. The Act also permits Supplemental Security Income ("SSI") payments to the aged, blind, and disabled to assure that their income does not fall below the poverty line. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.110. Although these programs are distinct, applicants must prove "disability" under both sections. *See* 42 U.S.C. § 423(d)(1)(A) (disability insurance); 42 U.S.C. § 1382c(a)(3)(A) (SSI). Both sections define disability using virtually the same language. *See* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

"Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (using "unable" rather than "inability"). A physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable

clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D). "The suffering of some impairment does not establish disability; a claimant is disabled only if he is 'incapable of engaging in any substantial gainful activity.'" *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (quoting *Milam v. Bowen*, 782 F.2d 1284, 1286 (5th Cir. 1987)). "The law and regulations governing the determination of disability are the same for both programs." *Roberts v. Colvin*, 946 F. Supp. 2d 646, 657 (S.D. Tex. 2013) (citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)).

## IV.    THE SHIFTING BURDEN OF PROOF.

The Act places the burden of establishing disability on the claimant. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). To be entitled to disability insurance benefits, a claimant "must show that he was disabled on or before the last day of his insured status." *Ware v. Schweiker*, 651 F.2d 408, 411 (5th Cir. 1981). SSI benefits are dependent on proof of disability and indigence, and a claimant can receive SSI payments once he applies to the program, no matter how long he has been disabled. *Torres v. Colvin*, No. 4:13-cv-2571, 2014 WL 4064002, at *6 (S.D. Tex. Aug. 15, 2014) (citing 42 U.S.C. §§ 1382a, c(a)(3), *Brown v. Apfel*, 192 F.3d 492, 495 n.1 (5th Cir. 1999), and 20 C.F.R. § 416.335).

Commissioner applies a five-step sequential process to determine disability status. *Id.* The claimant bears the burden of proof at the first four steps to establish

that a disability exists. *Farr v. Astrue*, No. G-10-205, 2012 WL 6020061, at *2 (S.D. Tex. Nov. 30, 2012). The burden shifts to Commissioner at step five to show that the claimant can perform other work. *Id.* The burden then shifts back to the claimant to rebut this finding. *Id.* If at any step in the process Commissioner determines that the claimant is or is not disabled, the evaluation ends. *Id.*

## V.    PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT.

Plaintiff raises several arguments related to the ALJ's treatment of her mental limitations. Plaintiff argues that the ALJ's conclusion that her mental limitations were non-severe at Step Two was unreasonable and made a faulty RFC determination that did not include any mental limitations, which led to a decision that Plaintiff could perform her highly skilled past work. ECF No. 15 at 3–4, 9–18.[8] Commissioner responds that the ALJ's RFC determination is supported by substantial evidence and the ALJ did not need to include limitations to Plaintiff's RFC based on non-severe mental impairments. ECF No. 16.

---

[8] Plaintiff addresses the ALJ's RFC determination in her argument related to the ALJ's assessment of her mental limitations at Step Two because "[g]enerally, where there is an error at step two, but the ALJ progresses beyond step two and develops an RFC that encompasses all of the claimant's impairments – those that are severe and those that are non-severe – the error is considered harmless." *Griffin v. Saul*, No. CV H-19-3321, 2021 WL 723941, at *4 (S.D. Tex. Feb. 24, 2021). Thus, the ALJ must "consider the combined effects of all impairments, without regard to whether any such impairment, if considered separately, would be of sufficient severity." *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000). Here, the ALJ found her mental health disabilities were non-severe, but failed to make any accommodations for them in his RFC or even address why he did not include any limitations for them.

**A.      The ALJ Improperly Assessed Plaintiff's Mental Limitations.**

Plaintiff argues that the ALJ erroneously found that Plaintiff experienced only mild limitations in her ability to: (1) understand, remember, or apply information; (2) concentrate, persist, and maintain pace; (3) interact with others; and (4) adapt or manage herself. ECF No. 15 at 9–14. Plaintiff argues that the ALJ ignored record evidence related to her mental impairments that demonstrate Plaintiff's cognition is significantly more impaired and improperly rejected the medical opinions of Drs. Kruppstadt, Salvato, Pitcher, and Busa-Knepp, ECF No. 15 at 22–24, and Plaintiff's testimony, ECF No. 15 at 24–26.

**1.      Plaintiff bears the burden at Step Two.**

At Step Two, Plaintiff bears the burden of showing that she has a severe impairment or combination of impairments that significantly limits her physical or mental ability to do basic work activities. *See Griffin*, 2021 WL 723941, at *4. The requirement that Plaintiff have a severe impairment is generally considered to be "a *de minimis* screening device to dispose of groundless claims." *See id.* (quoting *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing *Bowen v. Yuckert*, 482 U.S. 137, 153–54 (1987))). "[A]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th

Cir. 1985) (quoting *Estran v. Heckler*, 745 F.2d 340, 341 (5th Cir. 1984)). "Under the standard set forth in *Stone*, an impairment causing any interference with work ability, even minimal interference, is a severe impairment." *Griffin*, 2021 WL 723941, at *4 (citing *Scroggins v. Astrue*, 598 F.Supp.2d 800, 805 (N.D. Tex. 2009) ("*Stone* provides no allowance for a minimal interference on a claimant's ability to work.")).[9]

"The Social Security regulations set forth a psychiatric review technique— also known as the 'special technique'—for evaluating mental impairments at all levels of the administrative review process." *Estrada v. Comm'r of Soc. Sec. Admin.*, No. SA-18-CV-00002-DAE, 2019 WL 453619, at *4 (W.D. Tex. Feb. 5, 2019) (citing 20 C.F.R. § 404.1520a). "The special technique identifies four broad functional areas that the ALJ must consider in evaluating whether a claimant has a mental impairment: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself." *Id.* (citing 20 C.F.R. § 404.1520a(c)(3)).

"At step two, the ALJ must rate the degree of a claimant's limitations as to these four functional areas on a five-point scale (none, mild, moderate, marked, and

---

[9] For a limitation to be considered "mild," a claimant's functioning must be only affected "slightly." For a limitation to be considered "moderate," a claimant's functioning must be "fair." For a limitation to be considered "marked," a claimant's functioning must be considered "seriously limited." *See* 20 C.F.R. Subpt. P, App. 1, 12.00E, F(2).

extreme).” *Id.* (citing 20 C.F.R. § 404.1520a(c)(4)). “The ALJ’s written decision must incorporate specific findings as to the degree of limitation in each of these four functional areas.” *Id.* (citing 20 C.F.R. § 404.1520a(e)(4)). “After rating the degree of functional limitation resulting from a mental impairment, the ALJ must determine the severity of the impairment at step two.” *Id.* (citing 20 C.F.R. § 404.1520a(d)). “If the ALJ rates the degree of limitation in any functional area as ‘none’ or ‘mild,’ the ALJ ‘will generally conclude that [the] impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in [an] ability to do basic work activities.’” *Id.* (quoting 20 C.F.R. § 404.1520a(d)(1)). “The regulations do not conversely specify which findings, if any, dictate a conclusion that a given impairment is severe.” *Id.* (citing 20 C.F.R. § 404.1520a(d)(1)).[10]

“The ALJ considers several factors when evaluating medical opinions, including: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors as applicable.” *Bustos v. Kijakazi*, No. 2:23-

---

[10] “Under the governing regulations, if [Plaintiff] does ‘not have a severe medically determinable physical or mental impairment . . . or a combination of impairments that is severe . . . , we will find that you are not disabled.’” *Griffin*, 2021 WL 723941, at *4 (quoting 20 C.F.R. § 404.150(a)(4)(ii), 416.920(a)(4)(ii)). “But, because the regulations require [Plaintiff] to show only ‘a severe’ impairment, that is, one severe impairment in order to avoid a denial of benefits at step two, the failure to find a particular impairment severe at step two is not reversible in and of itself as long as the ALJ finds that at least one other impairment is severe.” *Id.* “However, even if an impairment is found non-severe at step two, the ALJ must still ‘consider the limiting effects of all [Plaintiff’s] impairment(s), even those that are not severe, in determining [RFC].’” *Id.* (quoting 20 C.F.R. §§ 404.1545(e), 416.945(e)); *see also* 20 C.F.R. § 404.1523; Social Security Ruling 96-8p, 1996 WL 374184, at *5; *Loza*, 219 F.3d at 393 (ALJ must consider combined effects of all impairments).

CV-00003, 2023 WL 9102280, at *10 (S.D. Tex. Dec. 5, 2023), *adopted*, No. 2:23-CV-00003, 2024 WL 55501 (S.D. Tex. Jan. 4, 2024) (citing 20 C.F.R. §§ 404.1520c(c); 416.920c(c)). "The most important factors when evaluating persuasiveness are supportability [11] and consistency. [12] " *Id.* (citing 20 C.F.R. §§ 404.1520c(a); 416.920c(a)). "The ALJ must articulate how persuasive they find all of the medical opinions and prior administrative medical findings in the record." *Id.* (citing 20 C.F.R. §§ 404.1520c(b); 416.920c(b)). "The ALJ must address supportability and consistency, but the other factors are optional." *Id.* (citing 20 C.F.R. §§ 404.1520c(b)(2); 416.920c(b)(2)).

In the instant case, the ALJ determined that Plaintiff's depression and anxiety were not severe because Plaintiff only experienced mild limitations in the four functional areas. The ALJ's determination that Plaintiff suffered no more than mild limitations during the relevant period is not supported by substantial evidence.

**2. Plaintiff suffers more than a mild limitation in understanding, remembering, or applying information.**

Regarding the first functional area, the ALJ stated that:

---

[11] "'Supportability' means that '[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.'" *Id.* (quoting 20 C.F.R. §§ 404.1520c(c)(1); 416.920c(c)(1)).

[12] "'Consistency' means that '[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.'" *Id.* (quoting 20 C.F.R. §§ 404.1520c(c)(2); 416.920c(c)(2)).

[Plaintiff] reported cognitive issues with processing speed (see 12F/8-9; 14F/14), but at that time, she was oriented and exhibited appropriate mentation. During a counseling session, she had abnormal recent memory abilities, but immediate and remote memory abilities were normal (10F/10). She also had logical thoughts and normal cognition. During a consultative examination, she had average fund of knowledge and intellect, as well as intact remote, short-term, and mid-term memory abilities (5F/4-6).

R. 19. Upon review of the record and ALJ's above citations, the Court finds that the ALJ's description of Plaintiff's medical records failed to accurately depict their contents.

> ### a. The ALJ cherry-picked single doctor visits from the record without considering the entirety of Plaintiff's treatment.

In the ALJ's first citation, the ALJ relied on notes from the Plaintiff's first visit on February 10, 2021, with Dr. Patricia Salvato, who primarily examined Plaintiff for fibromyalgia. R. 587–88.[13] But, the ALJ's above finding does not consider the notes from Dr. Salvato's subsequent examinations of Plaintiff on June 28, 2021, R. 397–98,[14] August 4, 2021, R. 394–96, 460,[15] October 27, 2021, R.

---

[13] In her intake, Dr. Salvato stated that Plaintiff suffered from "cognition issues including problems with processing speed and concentration," "has developed multiple chemical sensitivities in addition to sound and light sensitivity," and "has severe postexertional fatigue." R. 399. Dr. Salvato also noted that Plaintiff "is an RN but because of her cognitive and physical impairments she has not been able to perform her role as an RN." R. 399. Upon examination, Dr. Salvato noted Plaintiff was well-groomed and her mental status was appropriate. R. 399.

[14] On June 28, 2021, Dr. Salvato noted in her examination notes that Plaintiff's fibromyalgia and chronic fatigue had not improved. R. 397.

[15] On August 4, 2021, Dr. Salvato examined Plaintiff for fibromyalgia, fatigue, anxiety, panic attacks, and Epstein-Barr virus. R. 394. In addition to other positive findings, Dr. Salvato noted fatigue, insomnia, night sweats, anxiety, depression, panic attacks, and heat intolerance. R. 396. Dr. Salvato provided the following narrative: "[Plaintiff] is currently under my care. . . . She suffers

539,[16] and on January 17, 2022, R. 535–36.[17] Furthermore, on September 30, 2022, Dr. Salvato completed a function report and noted that Plaintiff had anxiety and depression, had good and bad days and would likely miss work more than 4 days a month due to her impairments. R. 733. The ALJ did not address Dr. Salvato's opinion related to how Plaintiff's depression and anxiety would affect Plaintiff's ability to work at Step Two or elsewhere in the written decision. R. 16–28.[18]

The ALJ next cited a doctor's visit on April 17, 2020, a couple of months before Plaintiff's alleged onset date in June 2020, when Plaintiff was examined by Dr. Chinyere Egbuna, who, according to the record, only examined Plaintiff once. R. 361.[19]

---

from overwhelming fatigue, muscle and joint pain, and low-grade fevers. [Plaintiff] is a nurse and has been physically unable to work for the past 10 months, since May 29, 2020, due to her recurrent symptoms. She is totally disabled from any gainful employment at this time." R. 460.

[16] Dr. Salvato noted in her treatment notes that Plaintiff continued to suffer from "severe anxiety," sensitivities to chemical, heat, and noise, and fatigue. R. 539.

[17] Dr. Salvato prescribed Plaintiff anti-anxiety medication and noted that she suffered from anxiety, depression, and panic attacks. R. 535–36.

[18] The ALJ primarily focused on Dr. Salvato's opinions regarding Plaintiff's physical limitations and made a cursory mention of "mentation" in a laundry list of other physical symptoms. R. 18 (addressing Dr. Salvato's fibromyalgia examinations), 25 (finding Dr. Salvato's opinion related to ambulation, range of motion, reflexes, mentation, handling, and grasping to be unpersuasive).

[19] The ALJ notes that during this visit, Plaintiff had abnormal recent memory abilities, but normal immediate and remote memory, and she also had logical thoughts and normal cognition. R. 19. Plaintiff visited Dr. Egbuna after an extended leave of absence from work due to uncontrolled anxiety. R. 361. Plaintiff told Dr. Egbuna that she had an anxiety disorder that she took prescribed medications for and that she also self-medicated at times with another individual's prescription drugs. R. 361. Dr. Egbuna found Plaintiff's recent cognitive memory to be abnormal, but the rest of her memory and judgment to be normal/fair. R. 362. Dr. Egbuna diagnosed Plaintiff with generalized anxiety disorder and mild benzodiazepine use disorder and found her to have problems with "social environment" and "occupational [sic]." R. 362. Dr. Egbuna found Plaintiff could

### b.   The ALJ's rejection of certain medical opinions as unpersuasive is unsupported by record evidence.

Further, the ALJ cited Dr. Gayle Pitcher, Ph.D., a licensed psychologist and consultative examiner. Dr. Pitcher found that Plaintiff had an average fund of knowledge and intellect, as well as intact remote, short-term, and mid-term memory abilities. R. 19. On November 16, 2021, Dr. Pitcher examined Plaintiff. R. 513–18. Dr. Pitcher noted that Plaintiff appeared for the tele-doc visit in a bathrobe, "acceptably groomed" and with disheveled hair. R. 513.[20] In her examination, Dr. Pitcher noted Plaintiff was serious, but friendly, and cooperative, R. 515, her abstract thinking appeared minimally adequate, R. 516, her mood and affect appeared normal, R. 516, she was oriented to time and place, R. 516, her memory appeared intact, R. 516, and her concentration, attention, judgment, insight appeared adequate, R. 517.

Dr. Pitcher opined that Plaintiff's condition has persisted despite medical treatment and medication, and concluded that based on her evaluation, Plaintiff is

_____

return to work "from [his] standpoint" and found she needed individual therapy and a support group, but that her already-prescribed medication was sufficient. R. 363.

[20] During the visit, Plaintiff reported that she has difficulty leaving her home and feels sad and depressed. R. 514. Plaintiff reported living with her mother, daily going for short walks, watching television, taking out trash, getting mail, caring for pets, resting, and light chores. R. 514. Plaintiff reported that she keeps up with former coworkers, family, and friends. R. 514. Plaintiff stated that due to her cognitive and physical symptoms, she is unable to complete tasks on time, maintain focus, and have enough stamina to complete routine, daily tasks. R. 515. Plaintiff reported that she felt her symptoms improved with medication, but she was afraid to return to work and was "overwhelmed by the demands of the workplace." R. 515.

"unlikely to have the ability to sustain concentration and persist in work-related activity at a reasonable pace due to anxiety, depression, and multiple nonpsychiatric medical conditions." R. 518. The ALJ utilized only some of these findings in assessing mild limitations, and ultimately rejected Dr. Pitcher's opinion that Plaintiff would be unable to sustain concentration and persist in work-related activity due to her mental impairments. R. 19. In determining Plaintiff's RFC later in the decision, the ALJ rejected Dr. Pitcher's opinions as internally inconsistent with her findings showing a "completely normal mental status," and unsupported by the longitudinal record. R. 26.

Although Dr. Pitcher's examination resulted in largely normal findings, Dr. Pitcher also received a history of Plaintiff's illness, typical daily activities, social functioning, completion of tasks, episodes of decompensation, and a personal history, all of which arguably led to Dr. Pitcher's opinion. R. 513–15. Furthermore, the longitudinal record the ALJ cited does not show Plaintiff did not suffer from mental issues throughout the relevant time period. The ALJ cites to physical examinations that show Plaintiff "was alert, cooperative, congenial, and oriented with appropriate mentation and normal mood/affect." R. 26. Noticeably absent from the list of examinations are any examinations or opinions from the *mental health*

providers in the record.[21, 22, 23, 24] *See Dotson v. Kijakazi*, No. 4:20-CV-169-DAS, 2022 WL 180654, at *5 (N.D. Miss. Jan. 19, 2022) ("A decision that Dotson has no severe mental/emotional impairments, as defined by the Social Security Administration and no related limitations despite four concurring opinions by mental health specialists cannot be justified by 'normal' mental status notations, or the absence of any abnormal mental status notations by emergency room personnel and or physical therapists at physical therapy sessions. . . . These professionals are focused on treating physical impairments, not on mental problems. Nor did Dotson go to them for mental health treatment, so it would not be abnormal for him to omit discussing emotional difficulties.").

The longitudinal record instead shows evidence supporting Dr. Pitcher's opinions and the conclusion that Plaintiff suffered more than a mild limitation in her

---

[21] The ALJ cited to Dr. Jawad Sarwar's physical examination notes. Dr. Sarwar specializes in internal medicine. On February 1, 2021, Dr. Jawad Sarwar reported that Plaintiff reported suicidal thoughts and suffered from moderately severe depression. R. 483. Dr. Sarwar stated that Plaintiff's anxiety was stable but explored potential medication changes for Plaintiff's major depressive disorder due to her chronic issues. R. 484. On June 16, 2021, Plaintiff reported back to Dr. Sarwar for a refill of her anti-depressant. R. 491.

[22] The ALJ also cited to Dr. Milton Kirkwood's examination notes. Dr. Kirkwood specializes in family medicine. On December 1, 2021, Plaintiff presented to Dr. Kirkwood for a consultative physical examination. R. 521. Notably, Dr. Kirkwood did not opine on Plaintiff's mental functional capacity, only her physical limitations. R. 524.

[23] The ALJ cited to Dr. Salvato's notes. Dr. Salvato is an internal medicine specialist. As discussed above, Dr. Salvato found Plaintiff's depression and anxiety would cause her to have good and bad days and likely miss work more than 4 days a month. R. 460.

[24] The ALJ cited to Dr. Keith Schauder's examination notes. Dr. Schauder specializes in orthopedic surgery. Plaintiff visited Dr. Schauder on January 14, 2022 for her back pain. R. 646.

ability to understand, remember, or apply information. For example, on August 17, 2020, Plaintiff's primary care physician, Dr. Paula Kruppstadt, reported that Plaintiff's medical evaluations revealed several infections resulting in mental and physical symptoms, and due to her brain inflammation, Plaintiff's "cognition is impaired (processing speed, focus, concentration, recollection of words, math difficulties, difficulty remembering numbers, recollection of simple facts)," Plaintiff developed chemical, sound, and light sensitivities, a poor tolerance for stress, and an inability to concentrate when music or television is playing. R. 461–65. Dr. Kruppstadt opined that based on her treatment of Plaintiff, she found that Plaintiff's "cognitive abilities are impaired—doctors' orders need to be following and if cognition/word recollection is impaired, along with forgetfulness, if [Plaintiff] lacks self-awareness to KNOW that she has missed something, patient care could suffer." R. 464 (emphasis in original). Dr. Kruppstadt opined that Plaintiff's "cognition is impaired and her body is unable to perform at a medium or even low level of physical demand, let alone concentrate to be sure that patient medications and doctors' orders are precisely followed." R. 468. Dr. Kruppstadt thought she could return to work within 9-18 months—Plaintiff's "brain chemistry must return to normal before she can function as an RN IV." R. 468.

The ALJ found Dr. Kruppstadt's opinion to also be unpersuasive because her opinion "revolved mostly around [Plaintiff's] ability to return to her nursing job,"

and was "neither valuable nor persuasive, as these are issues that are resolved for the Commissioner." R. 25. Although the Court agrees that the ALJ is not required to consider Dr. Krupstadt's opinion that Plaintiff was unable to work, the ALJ was still obliged to consider Dr. Krupstadt's opinions related to Plaintiff's symptoms and the supporting evidence. *See Bayham v. Comm'r, SSA*, No. 4:19-CV-00781-CAN, 2021 WL 1196232, at *11 (E.D. Tex. Mar. 30, 2021) (the ALJ improperly rejected doctor's opinions related to claimant's limitations as conclusion reserved for the Commissioner) (citing *Winston v. Berryhill*, 755 F. App'x 395, 402 (5th Cir. 2018) ("Under the Social Security Act, a 'medical opinion' is a 'statement' from a physician, psychologist, or other acceptable medical source that 'reflect[s] judgments about the nature and severity of [the claimant's] impairment(s), including [her] symptoms, diagnosis and prognosis, what [she] can still do despite impairment(s), and [her] physical or mental restrictions.' "); *Diaz v. Colvin*, No. L-13-170, 2014 WL 2002277, at *3 (S.D. Tex. May 15, 2014) (finding that a medical source statement is not a legal conclusion as to a plaintiff's disability because the disability determination requires "an additional analytical step" past the medical evidence provided in a medical sources statement)).

Another source from the longitudinal record is Johnna Busa-Knepp, Psy.D., who met with Plaintiff for individual counseling sessions on November 3, 2021, November 8, 2021, October 13, 2022, and October 20, 2022. R. 735. Dr. Busa-

Knepp stated that she conducted psychological testing on Plaintiff and based on her testing, diagnosed Plaintiff with "major depression (recurrent, severe) and a generalized anxiety disorder." R. 735. Dr. Busa-Knepp opined that Plaintiff "lacks adequate coping resources" and "presents as distracted, forgetful, and hypervigilant/on edge during [] sessions." R. 735. Dr. Busa-Knepp noted that Plaintiff's "memory and ability to make decisions is poor and she gets overwhelmed easily with rather simple daily tasks." R. 735.

In assessing Plaintiff's RFC, the ALJ found Dr. Busa-Knepp's opinion to be "somewhat persuasive" insofar as it conformed to the ALJ's assessment of only mild limitations. R. 27. Specifically, the ALJ stated: "It is supported by the examiner's notes that the claimant was only seen four times, as well as with some of the claimant's reports relevant to short-term memory, anxiety, and limiting activity/errands to one per day. However, the longitudinal record does not support more than mild limitations, as examination findings were mostly unremarkable." R. 27. Again, in asserting that the longitudinal record does not support this opinion, the ALJ cites evidence outside of the relevant period and physical examination notes from doctors who do not specialize in mental health. R. 27. The exception in the ALJ's list is the citation to Dr. Pitcher's examination notes, but curiously, Dr. Pitcher's opinion is substantively similar to Dr. Busa-Knepp's rejected

20

opinion.[25] The record shows that Plaintiff suffered more than a mild limitation in this functional area.

### 3.    Plaintiff suffers more than a mild limitation in interacting with others.

Next, as to interacting with others, the ALJ stated that:

> In this area, the claimant has mild limitation. She reported depression, anxiety, and sadness, but she also acknowledged being able to keep up with friends and former coworkers (5F/3). During a counseling session, she was cooperative with normal speech and normal/euthymic mood/affect (10F/10). During a consultative examination, she was cooperative, sustained eye contact, established rapport, and engaged in conversation, and she had normal speech and language abilities as well as normal mood/affect (5F/4-6).

R. 19. The ALJ again relied on Dr. Pitcher's examination notes but rejected her opinion that it was unlikely that Plaintiff "could maintain effective social interaction on a consistent and independent basis with supervisors, co-workers, and the public, or cope with normal pressures in a competitive work setting." R. 518. The ALJ also

---

[25] Also in the longitudinal record, Plaintiff noted in her February 16, 2021 function report that she had poor short-term memory, R. 410, inability to handle stress, R. 411, and anxiety from changes in her routine, R. 411. On May 4, 2022, Plaintiff completed another function report and reported that her brain is foggy and some days she cannot remember things, especially short-term memories. R. 427. Plaintiff also reported that it takes her a long time to follow instructions because she cannot remember the steps. R. 432. Plaintiff also testified on November 22, 2022 before the ALJ, and stated that her memory and concentration were lacking—word recollection and short-term memory were particularly deficient. R. 54. In the written decision, the ALJ noted that "[a]fter careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." R. 23. Given the review of the record as discussed in this opinion, the Court is skeptical of the ALJ's assessment of Plaintiff's credibility as the record seems to support at least some of Plaintiff's testimony.

again relied on Dr. Egbuna's examination notes from April 17, 2020, before the alleged onset date. R. 569.

The record instead shows that Plaintiff indeed suffered more than a mild limitation in her ability to interact with others. In addition to Dr. Pitcher's above opinion, Plaintiff testified that when she worked, she would experience anxiety and need to remove herself from work. R. 53. She stated she cannot be around people for an extended time. R. 53.

### 4.   Plaintiff suffers more than a mild limitation in concentrating, persisting, or maintaining pace.

Regarding concentrating, persisting or maintaining pace, the ALJ stated that:

> In this area, the claimant has mild limitation. She reported problems with task completion due to issues with focus, stamina, and endurance (5F/4). However, she displayed adequate attention and concentration, as she was able to do simple math problems mentally, repeat four digits backward and forward, spell "world" forward and backward, and do serial 7s (5F/4-6).

R. 19. Again, the ALJ only relies on Dr. Pitcher's examination findings, but not opinion, and fails to consider the other evidence in the record that Plaintiff suffers from significant limitations.

For instance, Dr. Busa-Knepp opined that Plaintiff "lacks adequate coping resources" and "presents as distracted, forgetful, and hypervigilant/on edge during [] sessions" and noted that Plaintiff's "memory and ability to make decisions is poor and she gets overwhelmed easily with rather simple daily tasks." R. 735.

Furthermore, Dr. Kruppstadt opined Plaintiff's "cognitive abilities are impaired—doctors' orders need to be following and if cognition/word recollection is impaired, along with forgetfulness, if [Plaintiff] lacks self-awareness to KNOW that she has missed something, patient care could suffer." R. 464 (emphasis in original).

Plaintiff also reported in her May 4, 2022 function report that she is overwhelmed by too much light, loud noises, and certain odors; she has depression that causes her to cry for no reason; her brain is foggy and some days she cannot remember things, especially short-term memories. R. 427. Plaintiff reported that it takes her a long time to follow instructions because she cannot remember the steps. R. 432. Plaintiff stated that she does not handle stress well and has a physical reaction to stressful situations, and also experiences fear if she is going to be around other people. R. 433. Plaintiff also testified before the ALJ that when she worked, she would experience anxiety and need to remove herself from work. R. 53. The record shows that Plaintiff suffered more than a mild limitation in this functional area.

### 5. Plaintiff suffers more than a mild limitation in adapting or managing oneself.

With regard to adapting or managing oneself, the ALJ stated that:

> In this area, the claimant has mild limitation. She reported problems leaving her home, as well as sadness, lack of motivation, and becoming fatigued quickly (5F/3). During counseling, she exhibited fair insight/judgment and normal motor activity (10F/10),[26] and during a

---

[26] The ALJ also again relied on Dr. Egbuna's examination notes from April 17, 2020, before the alleged onset date. R. 569.

consultative examination, she had adequate judgment, fair insight, and normal motor activity (5F/4-6).

R. 20. The ALJ again relied on Dr. Pitcher's examination notes but rejected her opinion that it was unlikely that Plaintiff "could . . . cope with normal pressures in a competitive work setting." R. 518.

In addition to Dr. Pitcher's above opinion, the record shows that Plaintiff suffered more than a mild limitation in her ability to adapting or managing oneself. On February 16, 2021, Plaintiff reported in her function report that she lived with her mother, had good and bad days, found it hard to remember things and get out of bed. R. 405. On May 4, 2022, Plaintiff completed another function report and reported that she spent most of the day in a recliner and might sit on the patio, and she sometimes helps her mother eat and take her medications. R. 428. She stated that her mother does the majority of the cooking and a housekeeper handles the housework. R. 428–29. Also, Dr. Salvato noted in her function report that Plaintiff had anxiety and depression, which caused her to have good and bad days, such that she would likely miss work more than 4 days a month due to her cognitive impairments. R. 733.

**6.    The ALJ's overview of Plaintiff's mental health treatment at Step Two is inaccurate.**

In addition to addressing each of the four areas of limitation individually, the ALJ also gave an overview of Plaintiff's mental health treatment, but again, the

ALJ's description does not accurately describe the record. For example, the ALJ stated that "[l]ater in 2020, the claimant reported some anxiety and depression, and endorsed sadness, crying spells, sleep/appetite problems, rumination, irritability, suicidal thoughts, lack of interest in things, feeling guilty, tiring easily, concentration problems, worry, and nervousness (10F/2), but there were no objective examination findings noted at that time." R. 20.

But there were objective examination findings from Dr. Amanda Eberle, a clinical psychologist, in late 2020. On December 22, 2020, Amanda Eberle, Psy. D. examined Plaintiff. R. 354. Dr. Eberle utilized several assessments including the Beck Depression Inventory, Beck Anxiety Inventory, and Personality Adult Inventory, and based upon these objective examination findings, which are provided in the record, Dr. Eberle diagnosed Plaintiff with "major depressive disorder, recurrent, mild." R. 356.[27] Specifically, Dr. Eberle noted that Plaintiff's score on the Beck Depression Inventory interpreted to "severe" and her score on the Beck Anxiety Inventory interpreted to "moderate." R. 700. Moreover, Plaintiff's Personality Assessment Inventory scores were severe, with a T-score 80 or higher, in the categories of anxiety, depression, mania/hypomania, and drug dependence

---

[27] Also in late 2020, on December 3, 2020, Dr. Bushra Aziz, a psychiatry specialist, examined Plaintiff for her anxiety and depression. R. 358. Dr. Aziz assessed Plaintiff for suicide risk and noted that Plaintiff suffered from a history of self-mutilation and felt that she would die from suicide someday. R. 359. Dr. Aziz diagnosed Plaintiff with "major depressive disorder, recurrent, in full remission," and prescribed her an antidepressant and recommended therapy. R. 359.

characteristics. R. 356.

> **7.  In sum, Plaintiff carried her burden of establishing that her depression and anxiety caused more than a mild limitation on her ability to work.**

As previously stated, at Step Two, Plaintiff had a *de minimis* burden of establishing that her depression and anxiety would interfere, even minimally, with Plaintiff's ability to work. *See Griffin*, 2021 WL 723941, at *4. The ALJ's determination that Plaintiff only had mild limitations in understanding, remembering, and applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing herself is not supported by substantial evidence. The ALJ mostly relied on examinations by doctors who do not specialize in mental health and examinations conducted outside of the relevant period. The ALJ also improperly rejected the majority of mental health providers' opinions as inconsistent by relying on that same evidence. Although Plaintiff had some normal examination findings in her medical records, Plaintiff also provided numerous abnormal examination findings, diagnoses, and opinions from mental health providers who stated her depression and anxiety would interfere with Plaintiff's ability to work.

The ALJ's Step Two finding, including the discounting of the above-discussed medical opinions, is not supported by substantial evidence and is error. *See Griffin*, 2021 WL 723941, at *8 (ALJ erred at Step Two where the record

demonstrated that the claimant's depression was a severe impairment throughout the relevant period).

**B.    The ALJ's Error Was Harmful.**

"Generally, where there is an error at step two, but the ALJ progresses beyond step two and develops an RFC that encompasses all of the claimant's impairments – those that are severe and those that are non-severe– the error is considered harmless." *Griffin*, 2021 WL 723941, at *8 (citing *Gibbons v. Colvin*, No. 3:12–CV–0427–BH, 2013 WL 1293902 *16 (N.D. Tex. 2013) (any error at step two in assessing the claimant's mental impairment was harmless); *Reliford v. Colvin*, No. H–12–1850, 2013 WL 1787650 *13 (S.D. Tex. 2013) ("even if the ALJ's failure to make a specific severity finding with regard to foot pain was an error, it was harmless because he considered related limitations at subsequent steps of the disability analysis"); *Garcia v. Astrue*, No. M.–08–264, 2012 WL 13716 (S.D. Tex. 2012) (even if the ALJ erred at step two in failing to address the severity of the claimant's right leg venous thrombosis, that error was harmless because the ALJ considered all the claimant's limitations in determining his RFC, and decided the case at step five)).

Here, while the ALJ did progress beyond step two, the ALJ did not include *any* mental limitations in the RFC that would account for or accommodate Plaintiff's anxiety and depression, whether it was severe or not. R. 28. Instead, the ALJ specifically did not include any mental limitations, and stated, as part of the RFC

analysis, that Plaintiff did not have a severe mental impairment. R. 22–27. Insofar as the ALJ erred by not considering Plaintiff's anxiety and depression to be a severe impairment at Step Two, the ALJ also erred by failing to make any accommodation in the RFC for Plaintiff's anxiety and depression. *See Griffin*, 2021 WL 723941, at *8 (citing *Loza*, 219 F.3d at 393 ("In determining whether a claimant's physical or mental impairments are of a sufficient medical severity as could be the basis of eligibility under the law, the ALJ is required to consider the combined effects of all impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. If the ALJ finds a medically severe combination of impairments, 'the combined impact of the impairments will be considered throughout the disability determination process.'") (internal citations omitted)).

That error was not harmless. *See Griffin*, 2021 WL 723941, at *8 (citing *Patel v. Berryhill*, No. 4:16-CV-02066, 2017 WL 4155463, at *3 (S.D. Tex. Sept. 19, 2017) (ALJ did not commit harmless error when he determined plaintiff's medically determinable mental impairments of depression and anxiety were not severe; this error led to the failure to include any mental limitations in the residual-functional-capacity assessment, which in turn, led directly to the conclusion that plaintiff could perform his past relevant work); *Corbitt v. Comm'r of Soc. Sec. Admin.*, No. 3:10-10-CV-558-CWR-LRA, 2013 WL 603896, at *5-6 (S.D. Miss. Feb. 19, 2013)

(remanding case where the "ALJ's decision show[ed] that he did not seriously consider the specific problems" that the claimant's "diabetes create[d]" either at step two or "in the remainder of the five-step evaluation process to justify a finding of harmless error")).

To summarize, the ALJ's error at Step Two, and unsupported determination that Plaintiff's anxiety and depression were not severe, clouded the Step Four determination insofar as no mental limitations were included in the RFC. As a result, that Step Two error was not harmless, and therefore remand for further development and consideration is warranted. *See Griffin*, 2021 WL 723941, at *9. [28]

## VI.   CONCLUSION

Therefore, it is **ORDERED** that Plaintiff's motion for summary judgment, ECF No. 14, is **GRANTED**. Commissioner's motion for summary judgment, ECF No. 16, is **DENIED**. The ALJ's decision denying benefits is **REVERSED,** and the case is **REMANDED** for proceedings consistent with Memorandum and Order.

Signed at Houston, Texas, on June 26, 2024.

**Dena Hanovice Palermo**
**United States Magistrate Judge**

---

[28] Finding remand appropriate on this issue, the Court does not address Plaintiff's other arguments, which may be raised on remand.